# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:                                              Bky. No. 15-42184

Cynthia Noll,                                       Chapter 7

    Debtor.

                                               Adv. No. 17-4066

---

Randall L. Seaver,
Trustee,                                            Adv. No. 17-4066

    Plaintiff,

v.
                                                 <u>MEMORANDUM
                                               OPINION AND ORDER</u>

Michael D. Noll,

    Defendant.

---

    At Minneapolis, Minnesota, September 27, 2018.

    This adversary proceeding came on for trial on July 17, 2018 on the plaintiff's complaint seeking to avoid and recover transfers made to the defendant. Andrea M. Hauser appeared for the plaintiff. Alexander J. Beeby appeared for the defendant. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S. §§ 157(b)(1) and 1334, and Local Rule 1070-1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(H).

## FACTS

1. The debtor and the defendant are married and live together.

2. The debtor was a minority shareholder in RSC Development Company.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 09/27/2018
Lori Vosejpka, Clerk, by LH

3. On November 20, 2003, RSC executed a note and mortgage to M &I Marshall & Islley Bank/ BMO Harris Bank, in the amount of $2,065,000, secured by commercial real estate.

4. The debtor executed a Continuing Guaranty (Unlimited) of RSC's indebtedness under the note and mortgage on November 20, 2003, pursuant to which the debtor absolutely and unconditionally guaranteed RSC's full performance and repayment of the note and mortgage. The note and mortgage were subsequently assigned to Wells Fargo.

5. On June 30, 2013, RSC defaulted on its obligations under the note and mortgage.

6. On June 27, 2014, Wells Fargo commenced an action against RSC, the debtor, and other guarantors of RSC's mortgage indebtedness in the Anoka County District Court, Wells Fargo Bank, N.A. v. RSC Development Company, LLC, John Froehling, Cynthia Noll, Scott D. Schwab, James W. Sullivan, et al., Case No. 02-CV-14-3711, seeking a judgment of over $2 million.

7. On May 5, 2015, Wells Fargo obtained a decree of foreclosure and judgment against the debtor and others of $2,404,459.33, plus interest of $438,711.88, and late charges of $39,782.37, for a total of judgment of $2,883,253.58. The Notice of Entry of Judgment was docketed on May 7, 2015.

8. At all relevant times, the debtor and the defendant had the following three bank accounts at Beacon Bank.

   a. Joint checking account ending in no. 6651 in the name of Cynthia and Michael Noll;

   b. Joint savings account ending in no. 9642 in the name of Cynthia and Michael Noll; and

    c. Individual account ending in no. 0378 held solely in the name of Michael Noll.

9. In January of 2013, the debtor and the defendant refinanced the mortgage on their homestead located in Plymouth, Minnesota, and obtained cash in the amount of $51,058.56.

10. The debtor and the defendant each had an ownership interest in half of the refinanced amount, or approximately $25,500 each.

11. The debtor and the defendant refinanced their home and obtained the cash because the debtor believed that she was going to owe corporate taxes at the end of 2013.

12. On October 31, 2014, the joint savings account held a balance of $53,161.25. The majority of this balance was proceeds from the refinancing of the home in early 2013.

13. Joel F. Carlson, the Nolls' accountant and tax preparer, sent them a letter, dated November 6, 2014, recommending an additional $27,000 payment toward their estimated 2014 federal income taxes and an additional $7,000 payment toward their estimated 2014 Minnesota income taxes and providing payment vouchers in these amounts.

14. Carlson felt that the debtor had to make timely payments toward their taxes to avoid fees and penalties. He estimated the tax liabilities based on a potential foreclosure or sale of the business building and the tax treatment and prior year taxes of the business entity.

15. On November 13, 2014, the debtor transferred $34,000 from the joint savings account to the joint checking account, with the memo "Estimated Taxes 201[4]," from which the following payments were made:

    a. A check for $7,000 to the Minnesota Department of Revenue for the 2014 income taxes which cleared on November 14, 2014; and

   b. A check for $27,000 to the United States Treasury for the 2014 income taxes which cleared on November 17, 2014.

16. The debtor believed she owed more than the amount she paid toward her taxes and penalties, and did not expect a refund. She believed that when the business property was sold, she would be responsible for significant capital gain taxes.

17. On January 28, 2015, the defendant opened an individual account with a direct deposit of $12,707.74 from his employer, US Foods. After opening the account, all of his subsequent paychecks went into that account and nothing into the joint account.

18. On February 3, 2015, the defendant transferred $10,000 from the joint checking account and $15,000 from the joint savings account to his new individual account, representing "Mike's half of refinance."

19. On February 15, 2015, the defendant's individual account held a balance of $42,742.63.

20. On March 3, 2015, the joint savings account was closed and the entire remaining balance of $4,148.12 was transferred to the joint checking account.

21. The debtor and the defendant filed tax returns on April 10, 2015.

   a. They paid a total of $17,912 to the Minnesota Department of Revenue for their 2014 income taxes, which consisted of the $7,000 November estimated tax payment, $7,179 in withholdings from the defendant's paychecks, and $1,733 in withholdings from the debtor's paychecks. The total state tax due was $6,877.

   b. They paid a total of $50,232 toward their federal taxes, which included estimated tax payment of $27,000 and $19,368 in withholding from the defendant's paychecks and $3,864 in withholdings from the debtor's paychecks. The federal tax due was $14,086.

  c. The debtor earned $51,640.95, or 29.4%, of the Nolls' total W-2 wages in 2014, with the defendant earning of $124,147.55.

  d. The Nolls requested direct deposit of the tax refunds into the defendant's individual account.

22. On April 21, 2015, a state tax refund of $9,035 was deposited into the defendant's individual account.

23. On April 28, 2015, the defendant transferred $2,620.15 from his individual account to the joint account with the memo "29% of State Tax Refund."

24. On April 29, 2015, the defendant transferred another $271.05 from his individual account to the joint account with the memo "32% of tax refund adj."

25. On May 6, 2015, a $36,146 federal tax refund was directly deposited into the defendant's individual account.

26. On May 7, the defendant transferred $11,566.72 from his individual account to the joint checking account with the memo "32% of tax refund."

27. Carlson provided the Nolls with payment vouchers for their estimated first quarter of 2015 income taxes in the amounts of $6,000 for Minnesota and $21,000 for federal taxes.

28. On May 7, 2015, the defendant transferred $16,000 from his individual account to the joint checking account, with the memo "Add'l to pay Qtr. Est," and transferred $12,000 from the joint checking account to the defendant's individual account, with the memo "Reverse back funds not use."

29. On the same day, the debtor withdrew funds from the joint checking account and purchased a $3,000 cashier's check to pay estimated 2015 taxes to the Minnesota

Department of Revenue and a $12,000 cashier's check to pay estimated taxes to the IRS for the of 2015 tax year.

30. The following tax withholdings were deducted from the paychecks of the debtor and the defendant for their 2015 income taxes.

    a. $10,062 to their 2015 Minnesota income taxes, with the defendant paying $7,099 or 70.55% of this amount, and

    b. $26,960 to their 2015 federal income taxes, with the defendant paying $19,532 or 72.45% of this amount.

31. On June 17, 2015, the debtor filed her Chapter 7 petition. Her original bankruptcy schedules showed assets of $625,434.95 and liabilities of $3,809,302.29. She also provided in her schedules that she owed to the IRS $38,773.56 for "payroll taxes; $2,334.96, $614.94, and $580.00 owed to the Minnesota Dept. of Revenue for "business debt withholding," "partnership tax for RSC Dev. Co., LLC," and "S - Corp. payment;" and $25,291.18 owed to the MN Unemployment Compensation Fund.

32. The debtor received IRS notices dated August 1, 2016 of intent to levy on the debtor's property to collect a total of $63,469.16 of unpaid trust fund taxes from the debtor's business entity for the following tax periods.

    a. $4,307.75 for the tax period ending June 30, 2014;

    b. $23,594.74 for the tax period ending September 30, 2014;

    c. $32,429.45 for the tax period ending December 31, 2014; and

    d. $3,137.22 for the tax period ending March 31, 2015.

33. The Nolls' 2015 Federal Tax Return, dated December 28, 2016, showed that they were entitled to a refund of $16,306. However, this tax return incorrectly used the $21,000 recommended estimate payment instead of the actual estimated payment of $12,000.

34. By a letter dated October 17, 2016, the IRS notified the debtor and the defendant that the IRS changed their 2015 Form 1040 to match the IRS' record of estimated tax payments, credits applied from another tax year, and payments received with an extension to file, resulting in a refund due for the tax year of 2015 of $7,306.00.

35. The Nolls' 2015 Tax Return, prepared by Carlson, included a statement entitled "garnishment of refund:" "Please note that any refund due is to be applied to any outstanding debt due to the IRS. In this case there is and (sic.) amount due for trust fund taxes which should be paid with this refund." (emphasis omitted). Neither the debtor nor the defendant sought or obtained approval from the trustee to include the statement in their return.

36. The IRS sent the debtor a letter, dated May 17, 2017, informing her that the 2015 tax refund of $7,306 was applied to the debtor's trust-fund tax liabilities from her business for the tax periods of September 30, 2014 and December 31, 2014.

37. The Nolls were also due a refund from their 2015 Minnesota income taxes in the amount of $1,543.54. The trustee sent the refund check of $1,543.54 to the defendant's counsel for the defendant's and the debtor's endorsement. The defendant's counsel holds the unprocessed check pending further direction of the court.

38. Between September 22, 2014 and June 17, 2015, the petition date, $5,100 was transferred from the joint checking account to five 529 savings accounts with American Funds held in the defendant's name for the benefit of grandchildren in regular monthly payments.

39. The majority of the funds transferred to the 529 savings accounts for the benefits of their grandchildren were from the defendant's portion of money in the joint account and from monies he inherited when his mother passed away.

40. The debtor and the defendant opened an individual account for the defendant and transferred a portion of their money to that account to protect the defendant's money in the joint accounts from the bankruptcy trustee.

41. The trustee filed this adversary action on June 15, 2017, seeking judgment: 1) on the value of the transfers of $80,700 or more under 11 U.S.C. § 548(a)(1)(B); 2) for $80,700 or more under 11 U.S.C. § 544(b) and Minn. Stat. §§§ 513.44, 513.45 and 513.47; 3) for $80,700 under 11 U.S.C. § 548(a)(1)(A); 4) for $80,700 under 11 U.S.C. §544 and Minn. Stat. § 513.44(a)(1); 5) seeking turnover and an accounting under 11 U.S.C. §§ 541(a) and 542; and 6) for $80,700 under Minn. Stat. § 513.45(b).

42. The defendant filed his answer, denying liability on all of the trustee's claims, and asserting the defenses of failure to state a claim, and claiming that the trustee has double–counted the alleged transfers.

## ANALYSIS

The trustee claims that the transfers made to the defendant from the joint accounts, the payments to the taxing authorities, the tax refunds deposited in the defendant's individual account and deposits made to the 529 accounts are voidable transfers as constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B) and intentional fraudulent transfers under 11 U.S.C. § 548(a)(1)(A).

**Constructive Fraudulent Transfer**

The trustee seeks to avoid the transfers listed above pursuant to 11 U.S.C. § 548(a)(1)(B). That section provides in pertinent part that:

> (a)(1) The trustee may avoid any transfer… of an interest of the debtor in property…that was made… on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily - (B)(i) received less than a reasonably equivalent value in exchange for such transfer… and (B)(ii)(I) was insolvent on the date that such transfer was made… or became insolvent as a result of such transfer...

11 U.S.C. § 548(a)(1)(B).

To prevail on a claim under this section the trustee must prove, by a preponderance of the evidence, that the debtor was insolvent or became insolvent at the time of the transfer and that the payments were not made in exchange for reasonably equivalent value. *Pummill v. Greensfelder, Hemker & Gale* (*In re Richards & Conover Steel, Co.*), 267 B.R. 602, 612 (B.A.P. 8th Cir. 2001).

*1. Transfer*

Section 548 requires a transfer of an "interest of the debtor in property." 11 U.S.C. §548(a)(1). The debtor must have an interest in the property transferred, meaning the transfer must affect property that would have been property of the estate but for the transfer. *Begier v. IRS*, 496 U.S. 53, 58 (1990) (this includes "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings").

The parties agree that ownership interest of monies in a joint bank account is determined by Minnesota law. Minnesota statute provides in relevant parts that absent clear and convincing evidence to the contrary, "a joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit." Minn. Stat. §524.6-203(a)

(2017). The parties also agree that both the debtor and the defendant had an ownership interest in half of the amount received from the refinance of the mortgage on their homestead, meaning $25,500 each. The joint tax refunds are proportioned based their respective withholding from paychecks, which were 68% by the defendant and 32% by the debtor, not including their payments of estimated taxes.

    a.   <u>529 Accounts</u>

The trustee seeks to avoid the transfers to the 529 accounts. The debtor and the defendant initially funded these accounts for the benefit of their grandchildren when the defendant inherited some amount of money when his mother passed away. The later transfers to these accounts were from the defendant's portion of the funds in the joint account. I find the debtor's and the defendant's testimony regarding the 529 accounts credible. The debtor did not have any ownership interest in the funds used to fund the 529 accounts within the 2 years before the case was commenced. The trustee may not avoid these transfers.

    b.   <u>2014 Taxes</u>

For the year 2014, the Nolls' refunds totaled $45,181 including $9,037 from Minnesota and $36,146 from IRS. When allocating a joint tax refund between the spouses, it is in proportion to their respective tax withholdings. *Carlson v. Moratzka* (*In re Carlson*), 394 B.R. 491, 493 (B.A.P. 8th Cir. 2008). This analysis only applies to refunds that are strictly from amounts withheld from the parties' wages. The principle of *In re Carlson* is that a refund belongs to the parties in the ratio that they paid in. The debtor and the defendant paid estimated taxes of $34,000 in cash toward their 2014 taxes. Since the entire $34,000 was refunded, $17,000 or half was the debtor's property.

The balance of the refund or $11,181 was the result of withholding from their paychecks. Of the $11,181, 32% or $3,577.92 was due to withholding from the debtor's paycheck and was thus her property. *Id*. Adding that amount to $17,000 of the refund of the estimated taxes the debtor's interest in the refund was $20,577.92

The defendant transferred a total of $14,457.92 which he claims was the debtor's portion of the refunds from the 2014 taxes from his personal account to the joint account (consisting of $2,620.15 on April 28, $271.05 on April 29 and $11,566.72 on May 7, 2015). Since the debtor had an interest in $20,577.92, after the $14,457.92 transfer, there still remained a balance of $6,120 of the debtor's monies in the defendant's individual account. In another words, the debtor received transfers of $6,120 of the debtor's property from the state and the IRS, for which the debtor did not receive any value.

    c.  <u>2015 Taxes</u>

For the 2015 taxes, the defendant transferred $16,000 from his individual account to the joint checking account but on the same day, he transferred back $12,000. This left a total of $4,000 of his money in the joint checking account. The Nolls used $15,000 from the joint checking account to pay for their 2015 taxes. Out of this $15,000, the debtor had an interest in half or $7,500.

As of May 6, 2015, there was a balance of $9,072.74 in the joint checking account. After accounting for the $4,000 of the defendant's funds that remained in the joint account after the $12,000 transfer on May 7, 2015, we start with a balance of $5,072.74 in the joint checking account. Absence clear evidence, the debtor and the defendant have an equal share of ownership interest in the $5,072.74. The debtor's half interest was therefore $2,536.37.

The 2015 refund from IRS was $7,306. Out of this, the debtor had an ownership interest of 32%, representing her contribution, which was $2,337.92. However, the Nolls did not receive any of the refunds from the IRS because those funds went to satisfy her business tax obligations.

The 2015 refund from the state was $1,543.54. The debtor has an ownership interest of 32% based on her contribution which amounts to $493.93. The defendant has an ownership interest of the remaining balance of 1,049.61

*2. Insolvency*

The constructive fraudulent transfer claim requires that the debtor be insolvent at the time of the transfers. Insolvency is a financial condition such that the sum of the debtor's debts is greater than all of her property, excluding exempt property, at a fair valuation. 11 U.S.C. § 101(32)(A). The record is clear that the debtor was insolvent at the time the transfers and the defendant does not argue otherwise.

*3. Reasonably Equivalent Value*

The issue of whether a transfer was made for reasonably equivalent value is a question of fact. *Jacoway v. Anderson* (*In re Ozark Rest. Equip. Co.*), 850 F.2d 342, 344 (8th Cir.1988). In order for the plaintiff to prevail on his claim, he must show that the transfers were not transferred for reasonably equivalent value. *Id*. This requires an analysis of whether (1) value was given; (2) it was given in exchange for the transfer; and (3) what was transferred was reasonably equivalent to what was received. *Meeks v. Don Howard Charitable Remainder Trust* (*In re Southern Health Care of Ark., Inc.*), 309 B.R. 314, 319 (B.A.P. 8th Cir. 2004).

The Bankruptcy Code defines "value" as "property in satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support

to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A) "A transfer is in exchange for value if one is the quid pro quo of another." *In re Richards*, 267 B.R. at 612.

Importantly, when evaluating a transfer for reasonable equivalency under section 548(a)(1)(B)(i), a court must examine the entire situation. *In re Ozark Rest*, 850 F.2d at 344–345. There is no bright line rule used to determine when reasonably equivalent value is given. *Id*. (indicating that a determination of reasonably equivalent value is based on a "totality of the circumstances"); *Barber v. Golden Seed Co. Inc.*, 129 F.3d 382, 387 (7th Cir.1997) (stating that the standard for reasonable equivalence should depend on all the facts of each case). A determination of reasonably equivalent value is "fundamentally one of common sense, measured against market reality." *Leonard v. Mylex Corp.* (*In re Northgate Computer Sys., Inc*.), 240 B.R. 328, 365 (Bankr. D. Minn. 1999).

For the 2014 tax refunds, a balance of $6,120 remained in the defendant's account. Later transfers to the debtor's account were not "on account of the transaction." *See In re Richards*, 267 B.R. at 612; *Karen v. JNG Corporation* (*In re Lindell*), 334 B.R. 249, 254 (Bankr. D. Minn. 2005). In fact, the defendant did not understand that there was $6,120 of the debtor's money remaining in his account. Therefore, his subsequent transfers cannot be considered transfers on account of or in exchange for his receipt of that amount. *Id*. The debtor did not receive reasonably equivalent value. Therefore, in considering the totality of the circumstances, $6,120 was transferred to the defendant for no consideration. The plaintiff may avoid that amount.

Other than the 2014 tax refunds, each time there was a transfer of the debtor's property to the defendant, he transferred that same amount to the debtor. Additionally, for the 2015 tax refunds, the majority of the payments were used to satisfy the debtor's business tax liability. The debtor received a reasonably equivalent value for the transfers made for the 2015 taxes. The

defendant is entitled to his portion of the 2015 tax refund of $1,049.61. The balance of $493.93 is property of the estate.

### **Actual Fraud**

The plaintiff also seeks to avoid the transfers stated above under 11 U.S.C. § 548(a)(1)(A) and Minn. Stat. §§513.44(a)(1) and 513.44(b). To prevail on the bankruptcy claim, the plaintiff must prove that the debtor made the transfers with actual intent to hinder, delay, or defraud any entity to which she was indebted. 11 U.S.C. § 548(a)(1)(A). Similarly under Minnesota statute, a transfer is avoidable as to a creditor if the transfer was made with the intent to hinder, delay or defraud any creditor of the debtor. Minn. Stat. § 513.44(a)(1) (2017).

In general "because proof of actual intent to hinder, delay or defraud creditors may rarely be established by direct evidence, courts infer fraudulent intent from the circumstances surrounding the transfer." *Brown v. Third Nat'l Bank* (*In re Sherman*), 67 F.3d 1348, 1353 (8th Cir.1995) (citing *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254 (1st Cir.1991). Courts have often adopted eleven badges of fraud codified by states. *Kelly v. Armstrong*, 141 F.3d 799, 802 (8th Cir.1998). "Once a trustee establishes a confluence of several badges of fraud, the trustee is entitled to a presumption of fraudulent intent." *Id*. Minnesota's Uniform Fraudulent Transfer Act lists the following badges of fraud to consider in determining actual intent.

> (1) The transfer was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor

transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Minn.Stat. § 513.44(b) (2017).

The transfers were to an insider. The defendant is the debtor's husband. See 11 U.S.C. § 101(31)(A). Before and during the transfers, the debtor was insolvent. She was sued for substantially large amount debt that she was personally responsible for. The debtor and the defendant testified that they intended to separate the defendant's monies based on his contribution in a separate bank account for the purpose of taking his money out of the reach of creditors and the bankruptcy trustee. Based on the evidence clearly that was true. The scheme was carefully devised and executed to prevent the *defendant's* property from being caught up in the debtor's bankruptcy case, not to keep the *debtor's* property out of the reach of the debtor's creditors.

The debtor received reasonably equivalent value for most of the transfers. With the exception of a portion of the 2014 refund, an amount equal to her interest was transferred back to her each time the defendants received a transfer. Only a misunderstanding of *In re Carlson* kept this from happening in the case of the 2014 refund. The joint funds were used to satisfy only her obligation. The debtor received value for these transfers. The debtor and the defendant did not conceal or try to conceal the transfers. In fact, the debtor and the defendant were acting under the advice of their accountant and attorneys.  The plaintiff failed to establish a presumption of fraudulent intent to hinder, delay or defraud creditors. The plaintiff may not avoid the transfers based on actual fraud.

**Other Claims**

1. <u>Constructive Fraud under Minn. Stat. § 513.45</u>

Similar to the constructive fraud claim under the Bankruptcy Code, Minnesota statute also requires the plaintiff to establish that the debtor made a transfer to a creditor without the debtor receiving reasonably equivalent value in exchange for that transfer and the debtor was insolvent. Minn. Stat. § 513.45 (2017). Similar to the bankruptcy constructive fraudulent claim stated above, the plaintiff may avoid transfer to the extent of $6,120.00

2. <u>Recovery of Value of the Property under 11 U.S.C §550</u>

The plaintiff seeks recovery of the value of the property transferred pursuant to 11 U.S.C. § 550. Section 550 provides from whom the trustee may recover property whose transfer is avoided pursuant to 11 U.S.C. § 548. Section 550(a) allows the trustee to recover from any initial transferee or any immediate transferee of the initial transferee the property transferred or the value of that property. 11 U.S.C. § 550(a)(1) and (2); *Sherman v. Third National Bank* (*In re Sherman*), 67 F.3d 1348, 1356 (8th Cir.1995). Because the plaintiff may avoid the transfers under section 548, the plaintiff may recover $6,120.00 under section 550.

3. <u>Insider Preference under 11 U.S.C. § 544(b) and Minn. Stat. § 513.45(b)</u>

The plaintiff seeks to avoid the transfers into the defendant's account as an insider preference because he is the spouse of the debtor. Transfer between family members is presumed fraudulent transactions. *Neubauer v. Cloutier*, 122 N.W. 2d 623, 628 n.4 (Minn. 1963). However, a showing of a clear proof that the parties acted with impartiality and fairness will overcome this presumption. *Snyder Electric Co. v. Fleming*, 305 N.W.2d 863, 867 (Minn. 1981).

The evidence presented shows that the debtor and the defendant reasonably relied on the advice of their accountant to pay their taxes. Additionally, the possibility of high capital gains

and the other business tax obligations showed the transfers were made fairly and for legitimate purpose. I do not find insider preference in these transactions.

## CONCLUSION

For the reasons stated above, I conclude that the plaintiff has meet his burden under 11 U.S.C. § 548(a)(1)(B) and may avoid the transfers to the defendant of $6,120. He is also entitled to $493.93 of the 2015 state tax refund.

## ORDER

THEREFORE, IT IS ORDERED:

1. The transfers to the defendant totaling $6,120 are void.

2. The defendant shall endorse and deliver the 2015 Minnesota tax refund check to the plaintiff.

3. The plaintiff is awarded $493.93 of the Minnesota tax refund as property of the estate and he is entitled to the $1,049.61 balance of the refund in partial satisfaction of the avoided amounts.

4. The plaintiff shall recover from the defendant the sum of $5,070.39 plus costs of $350 for a total of $5,420.39.

LET JUDGMENT BE ENTERED ACCORDINGLY.

/e/ Robert J. Kressel
ROBERT J. KRESSEL
UNITED STATES BANKRUPTCY JUDGE